■ In the Matter of WOODLAWN VETERANS MUTUAL HOUSING COMPANY, INC., Respondent, v TAX COMMISSION OF THE CITY OF NEW YORK et al., Appellants.—Judgment, Supreme Court, Bronx County, entered June 19, 1972, granting the petitions and reducing the assessments for tax years 1963–1964 through 1971–1972, unanimously affirmed, without costs and disbursements. The property at issue, to wit, No. 4260 Katonah Avenue in the Bronx, is unique in the sense that it was built in 1959 as a Mitchell-Lama nine-story co-operative and, as a consequence, generates no income. It was constructed at a cost of $1,600,000 financed in large measure by a New York State Housing Finance Agency mortgage loan of $1,550,000 bearing interest of 3.392% for 50 years. Preliminarily, it is noted that the land components of the total assessments were confirmed by Special Term. Expert testimony on the value of the building itself conflicted, petitioner's expert opting for a $915,000 valuation as against the tax commission expert's valuation of $1,405,000 for both groups of years. Special Term reduced the building assessment in each group of years by $185,000—from $1,300,000 to $1,115,000. Since the building is rented as a co-operative, no capitalization of actual net rental income is possible. The petitioner's expert generated gross rental income from eight comparable apartment houses in the area. The commission's expert used valuations based on the sales of five properties in the vicinity between 1959 and 1964. This approach produced a land value to which was added per room rental values that substantially departed from the comparable figures of petitioner's expert and ranged 20% higher. Apparently the commission's expert was greatly influenced, in adapting the per room rental figures, which figures were unusually high in relation to those of comparable accommodations in the Bronx, by the cost of construction, the size of the New York State Housing Finance Agency mortgage and the amount of fire insurance. It is noted that the experts were in virtual agreement as to the costs and expenses of operating this property. Reliance by respondents-appellants on the cost of construction as mandating

acceptance of the building assessments imposed by the tax commission, disregards the nature of a Mitchell-Lama co-operative and the public policy behind its financing by a governmental agency. The mortgage financing represented all but $50,000 of the $1,600,000 cost of construction. This mortgage, by its terms and under these circumstances, is clearly not reflective of free and clear economic value. Similarly, the amount of fire insurance does not reflect real economic value, but must be maintained on a formula of replacement value less depreciation. That formula is influenced by subsequent inflation in the construction industry and not by any rise in the economic viability of the building. Finally, the original construction cost itself is reflective of incentives given to sponsors of Mitchell-Lama housing that distort economic value. Accordingly, Special Term's determination is clearly warranted and sustained by the record herein. Concur—Markewich, J. P., Lupiano, Silverman, Nunez and Yesawich, JJ.